**IN THE UNITED STATES DISTRICT COURT**
**FOR THE EASTERN DISTRICT OF TEXAS**
**MARSHALL DIVISION**

RPOST HOLDINGS INC., and RPOST          §
COMMUNICATIONS LIMITED,                 §
                                        §
   Plaintiffs,          §
                                        §
  v.                          § CIVIL ACTION NO. 2:12-CV-00513-JRG
                                        §
EXPERIAN MARKETING SOLUTIONS,           § JUDGE: Hon. Rodney Gilstrap
INC.,                                   §
                                        § JURY TRIAL DEMANDED
   Defendant.             §

### DEFENDANT'S MOTION TO DISMISS PLAINTIFFS' FIRST AMENDED COMPLAINT, OR IN THE ALTERNATIVE, STAY LITIGATION PENDING DETERMINATION OF STATE COURT AND BANKRUPTCY COURT ACTIONS

Defendant Experian Marketing Solutions, Inc. ("EMS") hereby moves to dismiss this

action for lack of subject matter jurisdiction pursuant to Federal Rule of Civil Procedure 12(b),

or, in the alternative, to stay this action pending the resolution of litigation in California

implicating the Plaintiffs that bears directly on their ownership of and authority to enforce the

asserted patents.[1] Specifically—as this Court recognized in staying cases involving the same

Plaintiffs and related patents—certain California state court cases, Chapter 13 federal bankruptcy

cases, and adversary proceedings in the bankruptcy cases, including shareholder derivative

---

[1] Plaintiffs have filed complaints in this Court against several other defendants asserting the same patents. *See, e.g., RPost Holdings Inc. v. Constant Contact, Inc.*, No. 2:12-cv-00510; *RPost Holdings Inc. v. Epsilon Data Management, LLC* , No. 2:12-cv-00511; *RPost Holdings, Inc. v. StrongMail Systems, Inc.*, No. 2:12-cv-00515; *RPost Holdings, Inc. v. Vocus, Inc.*, No. 2:12-cv-00516; *RPost Holdings, Inc. v. Infogroup, Inc*., No. 2:12-cv-00517; *RPost Holdings, Inc. v. DocuSign, Inc.*, No. 2:12-cv-00683. Some of the defendants who have been served have filed, or may file, similar motions to dismiss or stay litigation. Several other defendants have not yet been served and thus have not yet responded to the complaints.

actions (collectively, the "Pending California Actions")[2] "may have significant and substantive effects on the Plaintiffs' posture" in this case and "the consequences and foreseeable ramifications of [the Pending California Actions] create a material risk that the time and resources of both the parties and this Court could be wasted." *Rmail Ltd. v. Amazon.com, Inc.*, No. 2:10-CV-258-JRG (Dkt. No. 545, Aug. 2, 2013) (staying consolidated case for ninety days).

The Pending California Actions raise the same issues here as in the cases already stayed by this Court:

(1) the rulings and allegations in the Pending California Actions impugn Plaintiffs' standing in this case;

(2) the patent ownership issues raised  by the Pending California Actions are fundamentally a matter of state law;

(3) settlement is not an option as long as there is a cloud over Plaintiffs' authority to enforce the asserted patents and a threat of suit by third parties laying claim to the asserted patents; and

(4) different plaintiffs may take the case in a totally different direction as to asserted patents, patent claims, and theories of infringement.

---

[2] **State court cases**:  *Barton v. RPost Int'l Ltd.*, No. YC061581 (Cal. Super., Rice, J.) (compl. filed Jan. 29, 2010) ("Barton 581 Case"); *Barton v. RPost Int'l Ltd.*, No. YC065259 (Cal. Super., Rice, J.) (compl. filed July 28, 2011) ("Barton 259 Case").
**Lead bankruptcy cases**:  *In re Zafar David Khan*, No. 2:13-bk-19713-VZ (Bankr. C.D. Cal., Zurzolo, J.) ("Khan Bankruptcy Case"); *In re Terrance Alexander Tomkow*, No. 2:13-bk-19712-WB (Bankr. C.D. Cal., Brand, J.) ("Tomkow Bankruptcy Case") (collectively, "California Bankruptcy Cases").
**Adversary proceedings in bankruptcy cases**:  *Burke v. Khan*, No. 2:13-ap-01773-VZ (Bankr. C.D. Cal., Zurzolo, J.) ("Khan Shareholder Derivative Action"); *Burke v. Tomkow*, No. 2:13-ap-01774-WB (Bankr. C.D. Cal., Brand, J.) ("Tomkow Shareholder Derivative Action") (collectively, "Shareholder Derivative Actions"); *Barton v. Khan*, No. 2:13-ap-01752-VZ (Bankr. C.D. Cal., Zurzolo, J.) ("Khan Barton Adversary Proceeding"); *Barton v. Tomkow*, No. 2:13-ap-01751-WB (Bankr. C.D. Cal., Zurzolo, J.) ("Tomkow Barton Adversary Proceeding") (collectively, "Barton Adversary Proceedings").

These issues risk forcing the parties and the Court to expend resources in litigation, without possibility of settlement, ultimately to have to dismiss the case and start over—the only remedy available if the Plaintiffs lack standing at the inception of the case. *Schreiber Foods, Inc. v. Beatrice Cheese, Inc.*, 402 F.3d 1198, 1203 (Fed. Cir. 2005) ("In the area of patent infringement, this court has held that if the original plaintiff lacked Article III initial standing, the suit must be dismissed, and the jurisdictional defect cannot be cured by the addition of a party with standing, nor by the subsequent purchase of an interest in the patent in suit.") (citations omitted). To avoid this risk, the Court should dismiss this case without prejudice or stay this case until the Pending California Actions are resolved.

I.    **SUMMARY OF ARGUMENT**

This Court should dismiss or stay this action in order to (1) avoid wasting resources on this matter until there are rulings in the Pending California Actions that determine the ownership of the asserted patents; (2) ensure that settlement with the true owners of the asserted patents is always a meaningful alternative to litigation; (3) eliminate the possibility that Plaintiffs RPost Holdings, Inc. ("RPost Holdings") and RPost Communications Limited ("RComm") (collectively, "Plaintiffs") may benefit from fraudulently transferred assets and abscond with any potential award; and (4) eliminate the risk that EMS might be required to adjudicate the asserted patents multiple times.

In *Barton v. RPost Int'l Ltd.*, Superior Court of the State of California, Los Angeles County, Case No. YC065259 ("Barton 259 Case"), plaintiff Kenneth Barton alleged that Zafar Khan and Terrance Tomkow, the largest common shareholders and officers of RComm, RMail Limited ("RMail") and RPost International Limited ("RPost International"), fraudulently caused the transfer from RPost International to RMail and RComm of U.S. Patent No. 6,182,219 ("'219

patent") as well as other intellectual property assets, potentially including the asserted patents.[3]

These allegations were repeated in *Burke v. Khan*, No. 2:13-ap-01773-VZ, and *Burke v.*

*Tomkow*, No. 2:13-ap-01774-WB, the shareholder derivative actions filed as adversary pleadings

in the bankruptcy cases ("Shareholder Derivative Actions"). *See, e.g.*, *Burke v. Khan*, No. 2:13-

ap-01773-VZ, Compl. (Dkt. No. 001) ¶¶ 10, 12 & 34; *Burke v. Tomkow*, No. 2:13-ap-01774-

WB, Compl. (Dkt. No. 001) ¶¶ 10, 12 & 34. Plaintiffs in this matter—who include RComm but

**not** RPost International—now seek to profit from those alleged fraudulently transferred

intellectual property assets by bringing this patent infringement action against EMS.

The allegations of fraud in the Barton 259 Case and Shareholder Derivative Actions are

particularly credible in view of rulings by the court in *Barton v. RPost Int'l Ltd.*, Superior Court

of the State of California, Los Angeles County, Case No. YC061581 ("Barton 581 Case").

Following a trial in that case, the California State Court found that Mr. Khan, Dr. Tomkow, and

RPost International acted with "malice, oppression, and fraud" in converting more than six

million shares Mr. Barton held in RPost International and the defendants were ordered to pay

over four million dollars in compensation for the stolen shares, punitive damages, and damages

for emotional distress. *See, e.g.*, Declaration of Jason W. Glicksman in Support of Motion

("Glicksman Decl."), Ex. A (Barton 581 Case, Statement of Decision at 10 (Aug. 3, 2012)),

Glicksman Decl., Ex. B (Barton 581 Case, Ruling on Punitive Damages and Revisions to

Statement of Decision at 4 (June 18, 2013)).

---

[3] Plaintiffs' original Complaint against Experian Information Solutions, Inc. asserted the '219 patent, as well as U.S. Pat. No. 7,966,372 (the "'372 patent") and included RMail as a Plaintiff. (Compl., Dkt. No. 001 ¶¶ 3, 28-37.)  However, Plaintiffs' First Amended Complaint against EMS, filed August 30, 2013, does not assert any claims of the '219 patent or '372 patent and RMail is no longer a plaintiff. However, the remaining asserted patents—U.S. Pat. Nos. 8,161,104; 8,209,389; and 8,224,913—issued from continuation and divisional applications of the '372 patent.

Not only do the Pending California Actions cast doubt over Plaintiffs' legal standing in this case, the plaintiffs in the Shareholder Derivative Actions and Barton cases have put others accused of infringement by Plaintiffs on notice that they will challenge or seek to lay claim to any judgment in favor of or settlement with the Plaintiffs. *See Rmail Ltd. v. Amazon.com, Inc.*, No. 2:10-CV-258-JRG (Dkt. No. 540, July 30, 2013). Accordingly, EMS cannot settle this case without the risk of being sued or involuntarily drawn into the Pending California Actions by the plaintiffs in those actions.

The Court should dismiss this action without prejudice in light of the serious questions about Plaintiffs' standing, or, in the alternative, stay this action pending conclusion of the Pending California Actions. A defense of lack of ownership of the asserted patents or standing in this case would simply be repetitive of the contemporaneous state actions, thus dismissal is warranted. However, in the alternative, Defendant asks that this Court stay the matter until the California Actions determine which party owns the patents. Numerous federal district courts have stayed patent actions pending the resolution of contemporaneous state actions regarding the ownership of the patents at issue. Moreover, this Court has already stayed other RPost actions as a result of the Pending California Actions. A stay of the litigation in this matter meets all three of the factors used in the Eastern District of Texas for determining whether to grant a stay of litigation; therefore, if the Court determines not dismiss the action a stay is appropriate.

## II.     STATEMENT OF FACTS

### A.     The Barton 581 Case

On January 29, 2010, Mr. Barton, a substantial shareholder and founder of RPost International—which is not a Plaintiff in this action—brought a state court action for fraud and breach of fiduciary duty against, among other defendants, RPost International, RPost, Inc., and Mr. Khan and Dr. Tomkow. Glicksman Decl., Ex. A at 1. Mr. Barton alleged that the defendants

unlawfully converted his over 6,000,000 shares of RPost International. *Id.* at 5. On August 3, 2012, following a trial, the California State Court issued its Statement of Decision. *Id.* at 1. The California State Court found that RPost International, Mr. Khan and Dr. Tomkow had acted with malice, oppression, and fraud in converting Mr. Barton's shares. *Id.* at 10. They were ordered not only to restore the shares to Mr. Barton, but also to pay him punitive and general damages. *Id.* at 7-10.

On June 18, 2013, the California State Court issued its Ruling on Punitive Damages and Revisions to Statement of Decision. Glicksman Decl., Ex. B at 1. The California State Court revised its earlier decision and awarded over 4 million dollars to Mr. Barton in compensation for his converted shares, damages for emotional distress, and punitive damages against Mr. Khan and Dr. Tomkow. *Id.* at 3-5. In awarding punitive damages, the California State Court stated: "Mr. Khan's course of conduct in this case rises to a significant degree of reprehensibility." *Id.* at 4.

### B.    The Barton 259 Case

On July 28, 2011, Mr. Barton brought a state court action against defendants RPost International, RMail, and RComm alleging that RPost International, Mr. Khan, and Dr. Tomkow fraudulently transferred assets to RMail and RComm. Glicksman Decl., Ex. C (Barton 259 Case, Compl. (Dkt. No. 001, July 28, 2011)). Those fraudulently transferred assets include intellectual property rights held by RPost International. *Id.* at ¶ 9.

Mr. Barton alleges that Mr. Khan, Dr. Tomkow, and RPost International fraudulently transferred RPost International assets to RComm without the approval of or notice to RPost International's shareholders, including Mr. Barton. *Id.* at ¶¶ 10, 12. Specifically, the Barton 259 Case complaint states:

> 10. Plaintiff is informed and believes, and on that basis alleges, that RPost [International] transferred other RPost [International] assets to RComm (the "RPost-RComm Asset Transfers") in or about February-April 2011. RPost [International], acting without notice to and approval of all shareholders of RPost [International], transferred assets of RPost [International] to RComm (another newly formed Bermuda corporation (also formed at the behest (and under the control) of Messrs. Khan and Tomkow, among others)).
>
> * * * *
>
> 12. RPost [International], acting by and through Messrs. Khan and Tomkow, undertook and completed the RPost-RComm Asset Transfers with the actual intent to hinder, delay, or defraud Plaintiff.

*Id.* These averments are significant because the USPTO assignment records for the remaining asserted patents in this case indicate that they were all assigned by RPost International to RComm in a common document executed on March 21, 2011 and recorded on June 5, 2013 at Reel/Frame 030549/0838. *See*  Glicksman Decl., Ex. D (Patent Assignment Abstract of Title for U.S. Patent Nos. 8,161,104; 8,209,389; and  8,224,913; Patent Assignment Documents Recorded with USPTO at Reel 030549 Frames 0838-0844). The assignment agreement is signed only by Mr. Khan as an "Officer" of RPost International and by Dr. Tomkow as an "Officer" of RComm. *Id.*

Mr. Barton also alleges that Mr. Khan and Dr. Tomkow, who control both RPost International and RMail, caused RPost International to transfer $750,000 to RMail, which RMail then used to purchase intellectual property assets from RPost International. *Id.* at ¶ 9. Mr. Khan and Dr. Tomkow then had RPost International pay a license fee to RMail for the use of the very same intellectual property assets it held before the fraudulent transfer. *Id.*

RMail and RComm have since attempted to exploit the value of those fraudulently transferred assets in multiple patent infringement lawsuits, including lawsuits before this Court.

C.    **The California Bankruptcy Cases, the Barton Adversary Proceedings, and the Shareholder Derivative Actions**

Allegedly seeking to avoid paying a judgment to Mr. Barton, Mr. Khan and Dr. Tomkow each filed for bankruptcy under Chapter 13 on a Sunday evening after the California State Court in the Barton 581 Case indicated its decision was forthcoming. Glicksman Decl., Ex. E (Khan Bankruptcy Case, Volun. Pet. (Dkt. No. 001, Apr. 14, 2013) and Tomkow Bankruptcy Case, Volun. Pet. (Dkt. No. 001, Apr. 14, 2013)). Those bankruptcy filings have been objected to on numerous grounds by both the Trustee and Mr. Barton. Glicksman Decl., Ex. F (Khan Bankruptcy Case, Obj. to Conf. of Plan by Barton (Dkt. No. 024, May 21, 2013) and Tomkow Bankruptcy Case, Obj. to Conf. of Plan by Barton (Dkt. No. 023, May 21, 2013)); Glicksman Decl., Ex. G (Khan Bankruptcy Case, Obj. to Conf. of Plan by Trustee (Dkt. No. 025, May 30, 2013) and Tomkow Bankruptcy Case, Obj. to Conf. of Plan by Trustee (Dkt. No. 025, May 30, 2013)). Mr. Barton has also filed separate adversary proceedings in the Khan and Tomkow Bankruptcy Cases reporting the rulings in the Barton 581 Case and reiterating the allegations in the Barton 259 Case. Glicksman Decl., Ex. H (Khan Barton Adversary Proceeding, Compl. (Dkt. No. 001, July 25, 2013) and Tomkow Barton Adversary Proceeding, Compl. (Dkt. No. 001, July 25, 2013)).

One basis for those objections is that Mr. Khan and Dr. Tomkow attributed a value of $0.00 to their shares in various RPost entities, including RMail and RComm. Glicksman Decl., Ex. F at 5-9; Glicksman Decl., Ex. G at 3-4. There is overwhelming evidence that contradicts this valuation, including a settlement by RPost entities with Zix Corporation only days before the bankruptcy filings. Glicksman Decl., Ex. F at 5, 7-9; Glicksman Decl., Ex. I (Press Release, Zix Corp., Zix Corporation and RPost Reach Settlement Agreement (Apr. 19, 2013)). Mr. Khan and

Dr. Tomkow also attributed a value of $100,000 to Mr. Barton's judgment, far short of the over

$4 million that was awarded by the Court. Glicksman Decl., Ex. F at 3-4.

By filing for bankruptcy, not only have Mr. Khan and Dr. Tomkow placed their assets,

including control of RComm, and, therefore, the asserted patents, at issue in satisfying the over

$4 million dollar judgment of their creditor Mr. Barton, they have also triggered the Shareholder

Derivative Actions filed as adversary proceedings in the Khan and Tomkow Bankruptcy Cases.

Glicksman Decl., Ex. J (Khan Shareholder Derivative Action, Compl. (Dkt. No. 001, July 29,

2013); Tomkow Shareholder Derivative Action, Compl. (Dkt. No. 001, July 29, 2013)). The

Shareholder Derivative Actions make similar allegations as the Barton 259 Case regarding the

alleged fraudulent transfer of intellectual property assets out of RPost International and allege

that Mr. Khan and Dr. Tomkow misappropriated funds from RComm and violated their fiduciary

duties to RComm shareholders. Glicksman Decl., Ex. J, ¶¶ 34-38, 44-48. The plaintiffs in the

Shareholder Derivative Actions seek, among other remedies, (i) that a receiver or trustee be

appointed to manage and operate RComm to ensure that assets of RComm, including proceeds

from RComm's patent lawsuits, are secured, and (ii) that the court order that all proceeds from

RComm's patent lawsuits be held in trust, interplead to the Court, and/or paid to and held by a

receiver or trustee pending further order of that Court. Glicksman Decl., Ex. J, ¶ 52.

### D.   <u>Other RPost Patent Litigation Before This Court</u>

Plaintiffs have asserted patents against several other defendants in this Court, including

*Rmail Ltd. v. Amazon.com, Inc.*, No. 2:10-CV-258-JRG, in which Plaintiffs are asserting the '219

and '372 patents that were asserted in the original Complaint in this case. As this Court knows,

on the eve of trial in that case, defendant Adobe received correspondence from the plaintiffs in

both the Shareholder Derivative Actions and the Barton Cases. *Rmail Ltd. v. Amazon.com, Inc.*,

No. 2:10-CV-258-JRG (Dkt. No. 540, July 30, 2013). The Shareholder Derivative Actions

plaintiffs demanded that "before [Adobe] enters into any settlement or disposition concerning the lawsuit concerning RPost, RMail and Adobe, [Adobe] notify all interested parties, and obtain court approval (after providing reasonable notice) from the United States District Court and/or the Bankruptcy Court where Khan and Tomkow filed. We hope this notice will avoid potential litigation between [the Shareholder Derivative Action plaintiffs] and [Adobe]." *Id.*, Ex. A at 2. Counsel in the Barton cases stated: "[w]ithout prejudice to any of Mr. Barton's rights and remedies, in our opinion, no settlement of any IP actions—including the action pending against [Adobe]—should be negotiated or executed without full disclosure of these circumstances to, among other courts, the United States Bankruptcy Court and the United States Bankruptcy Trustees appointed to the Khan/Tomkow bankruptcies in the Central District in Los Angeles, prior and reasonable written notice to our office and other interested parties of the proposed terms, and other due process measures (including written notice to counsel for various RPost shareholders who have since filed derivative actions including fraudulent conveyance claims)." *Id.*, Ex. B at 2. In view of this correspondence and the Pending California Actions, this Court stayed the consolidated Amazon case for ninety days or until earlier order of the Court. *Rmail Ltd. v. Amazon.com, Inc.*, No. 2:10-CV-258-JRG (Dkt. No. 545, Aug. 2, 2013).

### E.     The Asserted Patents

In addition to the '219 and '372 patents withdrawn from this case, the ownership of the asserted patents—U.S. Patent No. 8,161,104 ("'104 patent"), U.S. Patent No. 8,209,389 ("'389 patent"), and U.S. Patent No. 8,224,913 ("'913 patent")—also appears to be at issue in the Pending California Actions. The USPTO assignment records for the asserted patent applications indicate that the '104, '389, and '913 patents were all assigned by RPost International to RComm in a common document executed on March 21, 2011 and recorded on June 5, 2013 at Reel/Frame 030549/0838. *See* Glicksman Decl., Ex. D. The assignment agreement is signed only by Mr.

Khan, on behalf of RPost International, and by Dr. Tomkow, on behalf of RComm. *Id.* The allegations in the Pending California Actions regarding the fraudulent transfer of assets from RPost International to RComm during this time period directly implicate the assignment of the asserted patents. *See, e.g.*, Glicksman Decl., Ex. C ¶ 10 ("Plaintiff is informed and believes, and on that basis alleges, that RPost [International] transferred other RPost [International] assets to RComm (the 'RPost-RComm Asset Transfers') in or about February-April 2011. RPost [International], acting without notice to and approval of all shareholders of RPost [International], transferred assets of RPost [International] to RComm (another newly formed Bermuda corporation (also formed at the behest (and under the control) of Messrs. Khan and Tomkow, among others))") & ¶ 12 ("RPost [International], acting by and through Messrs. Khan and Tomkow, undertook and completed the RPost-Rcomm Asset Transfers with the actual intent to hinder, delay, or defraud Plaintiff.").

### F. Procedural Posture of this Action

On August 24, 2012, over a year after the filing of the Barton 259 Case, Plaintiffs filed their initial Complaint in this matter. On March 15, 2013, the parties stipulated to dismiss the sole remaining Defendant, Experian Information Solutions, Inc. ("EIS"). Several months later, on August 30, 2013, Plaintiffs filed a First Amended Complaint and added EMS as a defendant. Just prior to the amendment of the Complaint, on August 27, 2013, EMS met and conferred with Plaintiffs prior to bringing this Motion. Plaintiffs refused either to dismiss their complaint or stay this litigation pending determination of the Pending California Actions and, as a result, EMS filed this Motion.

III.   **ARGUMENT**

   A.   **Legal Standards**

      1.   **Dismissal of Complaint for Lack of Standing Pursuant to Rule 12(b)(1)**

Standing "is an essential and unchanging part of the case-or-controversy requirement of Article III." *Lujan v. Defenders of Wildlife*, 504 U.S. 555, 560 (1992). In *Lujan*, the United States Supreme Court set forth the elements for the "irreducible constitutional minimum of standing":

> First, the plaintiff must have suffered an "injury in fact"—an invasion of a legally protected interest which is (a) concrete and particularized, and (b) "actual or imminent, not 'conjectural' or 'hypothetical'". Second, there must be a causal connection between the injury and the conduct complained of-the injury has to be "fairly ... trace[able] to the challenged action of the defendant, and not ... th[e] result [of] the independent action of some third party not before the court." Third, it must be "likely," as opposed to merely "speculative," that the injury will be "redressed by a favorable decision."

*Id.* at 560-61 (internal citations and footnote omitted). "The party invoking federal jurisdiction bears the burden of establishing these elements." *Id.* at 561. "'***Failure to establish any one [of them] deprives the federal courts of jurisdiction to hear the suit.***'" *Ford v. NYLCare Health Plans of Gulf Coast, Inc.*, 301 F.3d 329, 332-33 (5th Cir. 2002) (quoting *Rivera v. Wyeth-Ayerst Labs.*, 283 F.3d 315, 319 (5th Cir. 2002)) (emphasis added). Further, the Court "[is] not bound by the pleadings in order to decide [a] Rule 12(b)(1) motion [to dismiss for lack of standing], … rather, it [is] empowered to make factual findings that [are] determinative of jurisdiction." *See Center for Biological Diversity, Inc. v. BP Am. Production Co.*, 704 F.3d 413, 423 (5th Cir. Jan. 9, 2013).

In order to have standing to bring a patent infringement action, a party must be the "patentee"—i.e., it must own the patent, "either by issuance or by assignment." *Speedplay, Inc. v. Bebop, Inc.*, 211 F.3d 1245, 1249-50 (Fed. Cir. 2000). A plaintiff must have standing at the commencement of the action. *Schreiber Foods, Inc. v. Beatrice Cheese, Inc.*, 402 F.3d 1198,

1203 (Fed. Cir. 2005) ("In the area of patent infringement, this court has held that if the original

plaintiff lacked Article III initial standing, the suit must be dismissed, and the jurisdictional

defect cannot be cured by the addition of a party with standing, nor by the subsequent purchase

of an interest in the patent in suit.") (citing *Paradise Creations, Inc. v. U V Sales, Inc.*, 315 F.3d

1304, 1309 (Fed. Cir. 2003), and *Gaia Techs., Inc. v. Reconversion Techs., Inc.*, 93 F.3d 774,

780 (Fed. Cir. 1996)).

### 2. Stay of Litigation

"The district court has the inherent power to control its own docket, including the power

to stay proceedings." *Soverain Software LLC v. Amazon, Inc.*, 356 F. Supp. 2d 660, 662 (E.D.

Tex. 2005). Courts have largely used three factors in deciding whether to stay patent

infringement litigation: "(1) whether a stay will unduly prejudice or present a clear tactical

disadvantage to the nonmoving party, (2) whether a stay will simplify issues in question and trial

of the case, and (3) whether discovery is complete and whether a trial date has been set." *Id.* at

662.

Additionally, in matters where there are parallel federal and state court proceedings,

courts have utilized six factors to determine whether the federal court should abstain in favor of

the state court:

(1) assumption by either state or federal court over a res;
(2) relative inconvenience of the fora;
(3) avoidance of piecemeal litigation;
(4) order in which jurisdiction was obtained by the concurrent fora;
(5) extent federal law provides the rules of decision on the merits; and
(6) adequacy of the state proceedings in protecting the rights of the party invoking
federal jurisdiction.

*Nationstar Mortg., LLC v. Knox*, 351 Fed. Appx. 844, 851 (5th Cir. 2009) (citing *Colorado River*

*Water Conservation Dist. v. United States*, 424 U.S. 800, 813 (1976)). Although the abstention

doctrine does not directly apply here because the federal and state court proceedings do not

involve the same parties and issues, the factors are instructive in determining that this Court

should grant a stay.

> **B.    The RPost Plaintiffs Lack Standing to Bring Their Patent Infringement
> Claims**

This Court should dismiss this action, as rulings and allegations in the Pending California

Actions impugn Plaintiffs' ownership of and authority to enforce the asserted patents.

A party must own a patent in order to have standing to bring a patent infringement action.

*Speedplay*, 211 F.3d at 1249-50; *see Loral Fairchild Corp. v. Matsushita Electrical Industrial*

*Company, Ltd.*, 840 F. Supp. 211, 216 (E.D.N.Y. 1994). To allow this matter to proceed in view

of such doubt that the proper owner of the asserted patents is a plaintiff would substantially

prejudice EMS and potentially subject it to multiple suits regarding these patents. "The presence

of the owner of the patent as a party is indispensable, not only to give jurisdiction under patent

laws, but also in most cases to enable the alleged infringer to respond in one action to all claims

of infringement for his act, and thus either to defeat all claims in the one action, or by satisfying

one adverse decree to bar all subsequent actions." *Intellectual Property Dev., Inc. v. TCI*

*Cablevision of Calif., Inc.*, 248 F.3d 1333, 1347 (Fed. Cir. 2001) (citing *Independent Wireless*

*Telegraph Co. v. Radio Corp. of Am.*, 269 U.S. 459, 468 (1926)).

This Court recognized such prejudice in its Order staying certain of Plaintiffs' other

actions, acknowledging the Pending California Actions "may have significant and substantive

effects on the Plaintiffs' posture in these cases" and that:

> the consequences and foreseeable ramifications of these identified litigations in
> California create a material risk that the time and resources of both the parties and
> this Court could be wasted if such continue to move forward as currently
> scheduled.

*Rmail Ltd. v. Amazon.com, Inc.*, No. 2:10-CV-258-JRG (Dkt. No. 545, Aug. 2, 2013). If

Plaintiffs in the Pending California Actions were successful at some later point, EMS could be

subject to multiple suits. And the unresolved nature of Plaintiffs' standing creates substantial risk

with possible resolutions of this matter. In the Shareholder Derivative Actions and Barton

Adversary Proceedings, the plaintiffs seek a Court order that proceeds from RComm's lawsuits,

such as this one, be held in trust, interplead to the Bankruptcy Court or paid to a trustee or

receiver. Glicksman Decl., Ex. J, ¶ 36, 52. The plaintiffs in those cases have also warned other

defendants sued by RPost about problems created by any settlements with Plaintiffs. *Rmail Ltd.*

*v. Amazon.com, Inc.*, No. 2:10-CV-258-JRG (Dkt. No. 540, July 30, 2013).

Furthermore, Mr. Barton has sought to attach or levy execution on the intellectual

property assets transferred to RComm. Glicksman Decl., Ex. C. If Mr. Barton or RPost

International is awarded any ownership interest in the patents at issue, then Plaintiffs will further

lack standing as the result of Mr. Barton's or RPost International's non-participation in this

action. In *Ethicon, Inc. v. U.S. Surgical Corp.*, 135 F.3d 1456, 1467-68 (Fed. Cir. 1998), the

Federal Circuit stated:

> An action for infringement must join as plaintiffs all co-owners. . . .

> Further, as a matter of substantive patent law, all co-owners must ordinarily
> consent to join as plaintiffs in an infringement suit. Consequently, "one co-owner
> has the right to impede the other co-owner's ability to sue infringers by refusing to
> voluntarily join in such a suit."

*Id.* (quoting *Schering*, 104 F.3d at 345). Plaintiffs cannot cure a lack of standing by simply

adding RPost International or Mr. Barton to the lawsuit. In *Paradise Creations, Inc. v. UV Sales,*

*Inc.*, 315 F.3d 1304, 1309 (2003), the Federal Circuit set forth that in order for a party to have

standing under Article III, the plaintiff must demonstrate that it held enforceable title to the

patent at the inception of the lawsuit:

> Accordingly, this court has determined that in order to assert standing for patent
> infringement, the plaintiff must demonstrate that it held enforceable title to the
> patent *at the inception of the lawsuit.*

*Id.* (emphasis in original) (citing *Lans v. Digital Equipment Corp.*, 252 F.3d 1320, 1328 (Fed. Cir. 2001) (holding that the appellant did not have standing, because he had already assigned title to the patent at the inception of the lawsuit); *Gaia Techs., Inc. v. Reconversion Techs., Inc.*, 93 F.3d 774, 778 (Fed. Cir. 1996) (holding that the plaintiff's patent and trademark infringement claims were required to be dismissed for lack of standing, because of its "inability to prove that it was the owner of the Intellectual Property at the time the suit was filed"), *as amended on reh'g on different grounds*, 104 F.3d 1296 (Fed. Cir. 1996); *cf. Matos v. Sec'y of Dep't of Health & Human Servs.*, 35 F.3d 1549, 1553 (Fed. Cir. 1994)).

It appears from the Pending California Actions that Plaintiffs lacked standing to bring this action, and that they cannot remedy such failure. As a result, this Court should dismiss the First Amended Complaint without prejudice.

### C.   <u>All Three of the *Soverain* Factors Support Granting A Stay of This Action.</u>

To the extent that the Court is unwilling to dismiss this action based on the questions regarding the standing of Plaintiffs to bring their claims, this Court should stay this action until such time as the courts in the Pending California Actions make rulings as to the ownership of the asserted patents. This Court has already stayed other matters involving Plaintiffs related to the Pending California Actions. And, the three factors regularly used by the Eastern District of Texas to determine whether a stay in a patent matter should be granted all support granting a stay in this matter pending the determination of the Pending California Actions. *Soverain Software LLC v. Amazon, Inc.*, 356 F. Supp. 2d 660, 662 (E.D. Tex 2005); *see also Southwire Co. v. Cerro Wire, Inc.*, 750 F. Supp. 2d 775 (E.D. Tex. 2010); *Microlinc, LLC v. Intel Corp.*, 2010 WL 3766655 (E.D. Tex. 2010).

The first factor, whether a stay will prejudice plaintiff, supports the grant of a stay because the stay will result in little prejudice to Plaintiffs. Instead, EMS would suffer prejudice

here if Plaintiffs were allowed to continue on with this litigation where it appears that Plaintiffs

lack standing to bring these claims. To the extent EMS will continue to use the intellectual

property in question, the delay resulting from a stay would likely not be that long. The Barton

259 Case was filed July 28, 2011, over a year before this matter was even filed. And the Barton

259 Case is already well into discovery. Mr. Barton has already obtained a judgment in the

Barton 581 Case and did so in about two and a half years. On that same time schedule, the

Barton 259 Case could be resolved by the end of this year or shortly thereafter. Further, the

California Bankruptcy Cases and the related Shareholder Derivative Actions and Barton

Adversary Proceedings might be resolved in a similar timeframe. Plaintiffs delayed in bringing

an action regarding CheetahMail until August 2012, although CheetahMail has existed for

several years, and delayed amendment of the Complaint to name EMS for several more months.

As a result, it would appear Plaintiffs have little cause for concern with a short additional period

in which litigation is stayed in this matter.

      A stay would also satisfy the second factor, as a ruling in the Pending California Actions

would clearly simplify the issues in question in this matter. A ruling in favor of Mr. Barton or the

other RPost shareholders that the asserted patents were fraudulently transferred would be

dispositive of this action due to Plaintiffs' lack of standing. And based upon Mr. Barton's prior

success in the Barton 581 Case, where the Court found that RPost International, Mr. Khan and

Dr. Tomkow had engaged in fraud in converting Mr. Barton's shares, there is a reasonable

likelihood the Court may find that those parties also fraudulently transferred the asserted patents.

The Barton 581 Case court acknowledged that even if the Barton 259 Case does not proceed

further at this time, the fraudulent transfers may be addressed in post-judgment proceedings by

Mr. Barton if Mr. Khan, Mr. Tomkow and RPost International thwart his collection efforts. Glicksman Decl., Ex. B at 5.

Finally, the third factor—whether discovery is complete and a trial has been set—also favors the granting of a stay. EMS is moving for a stay very early in this matter, before any discovery has taken place and before a trial date had been set. Judicial economy clearly favors staying this litigation for a short time period until there is a ruling in the Pending California Actions.

### D.     Federal Courts Have Stayed Patent Infringement Actions Where A Concurrent State Court Action Would Determine Ownership of The Patents At Issue.

Several federal courts have granted motions to stay in patent infringement actions where there was a concurrent state court case which would determine ownership of the patents involved in the federal infringement action. In *Loral*, the court granted a motion to stay the patent infringement action pending the outcome of a California state action regarding ownership of the patent at issue. 840 F. Supp. at 219. In addition to infringement claims, after the filing of the California state action, the plaintiff in *Loral* amended its complaint to add claims concerning patent ownership against the two entities opposing it in the California state action. *Id.* at 212-13, 215. The *Loral* court used the six factors regarding abstention in making its ruling, acknowledging regarding the fifth factor involving the "rules of decision" that "the infringement claims are governed by federal law but ownership of these patents will be settled by state contract law." *Id.* at 217-18. Additionally, the court focused on the avoidance of piecemeal litigation:

> This litigation has taken up considerable time and resources of this court; abstention is not granted easily. Yet, in the interest of justice, there can be no other course but to stay this action pending the resolution of the California state action which we hope will be obtained quickly. The proof and questions of law of the infringement and ownership issues differ greatly; ownership of these patents is

governed by state contract law whereas infringement is governed by federal law; . . .

*Id.* at 218. And *Loral* is not the only matter in which a federal court has granted a stay of patent litigation pending a state court action regarding ownership of the patents. *See Intermedics Infusaid, Inc. v. Regents of the University of Minn.*, 804 F.2d 129 (Fed Cir. 1986) (affirming district court's grant of stay of declaratory judgment action pending Minnesota state court decision that could moot the patent suit).

A motion to dismiss or stay an action in federal court where "there is no 'serious federal interest in claiming the advantages thought to be inherent in a federal forum'" for a primary issue in the case is also supported by *Gunn v. Minton.* 568 U.S. __, 133 S.Ct. 1059 (2013) (quoting *Grable & Sons Metal Products, Inc. v. Darue Engineering & Mfg.*, 545 U.S. 308, 313, 125 S. Ct. 2363 (2005)) (holding that the state court had jurisdiction over a malpractice suit on an underlying patent case). Here, the ownership issue does not involve a "serious federal interest" and should therefore be decided by the state court actions. *Id.* Accordingly, this action should be dismissed or stayed pending the resolution of the state court actions.

## IV.    <u>CONCLUSION</u>

The rulings and allegations in the Pending California Actions raise serious questions as to the Plaintiffs' standing to bring their claims for patent infringement. EMS respectfully requests that this Court dismiss without prejudice the Plaintiffs' First Amended Complaint or, in the alternative, stay this action until the resolution of the Pending California Actions.

Dated: September 3, 2013            Respectfully submitted,

By:   /s/ R. Scott Feldmann
        R. Scott Feldmann, Pro Hac Vice
        Cal. State Bar No. 169230
        Thomas Dietrich, Pro Hac Vice
        Jason W. Glicksman, Pro Hac Vice
        BAKER & HOSTETLER LLP
        600 Anton Boulevard, Suite 900
        Costa Mesa, CA 92626-7221
        Telephone: (714) 754-6600
        Facsimile: (714) 754-6611
        Email: sfeldmann@bakerlaw.com
        Email: tdietrich@bakerlaw.com
        Email: jglicksman@bakerlaw.com

        Melissa R. Smith
        State Bar No. 24001351
        GILLAM & SMITH, LLP
        303 South Washington Avenue
        Marshall, Texas 75670
        Telephone: (903) 934-8450
        Facsimile: (903) 934-9256
        Email: Melissa@gillamsmithlaw.com

        ATTORNEYS FOR DEFENDANT
        EXPERIAN MARKETING SOLUTIONS,
        INC.

## <u>CERTIFICATE OF SERVICE</u>

I hereby certify that all counsel of record who are deemed to have consented to electronic service are being served with a copy of this document, DEFENDANT'S MOTION TO DISMISS PLAINTIFFS' FIRST AMENDED COMPLAINT, OR IN THE ALTERNATIVE, STAY LITIGATION PENDING DETERMINATION OF STATE COURT AND BANKRUPTCY COURT ACTIONS, via the Court's CM/ECF system per Local Rule CV-5(a)(3) on September 3, 2013. Any other counsel of record will be served by electronic mail, facsimile transmission and/or first class mail on this same date.

/s/ R. Scott Feldmann___
R. Scott Feldmann

## <u>CERTIFICATE OF CONFERENCE</u>

I certify that counsel for Experian Marketing Solutions, Inc., RPost Holdings Inc., and RPost Communications Limited have complied with the meet and confer requirement in Local Civil Rule CV-7(h). This motion is opposed. The personal conference required by Local Civil Rule CV-7(h) was conducted on August 27, 2013 by telephone. R. Scott Feldmann participated for Experian. Lewis Hudnell and Winston O. Huff participated for the RPost entities. An agreement was not reached because Experian and RPost have opposing views on the relief requested by this motion. The discussions have conclusively resulted in an impasse, leaving for the Court to decide the motion.

/s/ R. Scott Feldmann____
R. Scott Feldmann